## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| **JAMES E. LUNDEEN, SR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| *vs.* ) | |
| ) | **CAUSE NO. 1:12-cv-696-DKL-SEB** |
| **NICHOLAS RHOAD, Executive Director** ) | |
| **of the Indiana Professional Licensing** ) | |
| **Agency, in his official capacity,[1]** ) | |
| ) | |
| **Defendant.** ) | |

### ENTRY

### *Defendant's Motion to Dismiss* **[dkt. 55]**
### *Plaintiff's Second Motion for Preliminary Injunction* **[dkt. 64]**

This Cause is another challenge by James E. Lundeen, Sr. to the suspensions of his medical licenses in Ohio and Indiana.[2]  The defendant, the Executive Director of the Indiana Professional Licensing Agency, now seeks dismissal of this action for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the *Federal Rules of Civil Procedure*, and for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6).  Mr. Lundeen opposes the motion and it is now ripe for ruling.  For the reasons explained below, Defendant's motion to dismiss is granted and Plaintiff's second motion for a preliminary injunction is denied.

---

[1] Because Nicholas Rhoad is the current Executive Director of the Indiana Professional Licensing Agency and is sued in his official capacity, he is substituted as the defendant. Fed. R. Civ. P. 25(d).

[2] *See Lundeen v. Kelly*, No. 1:12-cv-696-DKL-SEB, *Entry Denying Requests for Injunctive Relief* [dkt. 21], at 1 n. 1, 2012 WL 3886331, at *1 n. 1 (S.D. Ind., Sept. 6, 2012) (listing cases); *Lundeen v. State Medical Board of Ohio*, No. 12AP-629, 2013 WL 209136, 2013-Ohio-112 (Ohio Ct. App., Jan. 17, 2013), *appeal not allowed*, 989 N.E.2d 1020, 2013-Ohio-2645 (Ohio, June 26, 2013).

## Background

Between September 2011 and May 2, 2012, Mr. Lundeen held a license to practice medicine in Indiana.   In February 2012, the Medical Licensing Board of Indiana ("Indiana Board"), a subdivision of the Indiana Professional Licensing Agency, summarily suspended his license for a period of ninety days and, in May 2012, the Indiana Board conditionally suspended his license indefinitely.  Both actions were taken in response to the December 2011 disciplinary permanent revocation of Mr. Lundeen's Ohio medical license by the State Medical Board of Ohio ("Ohio Board").

On May 11, 2011, the Ohio Board issued an emergency order summarily suspending Mr. Lundeen's Ohio medical license based on, among other things, allegations that he was excessively and inappropriately prescribing narcotics and failing to perform appropriate medical exams.   On December 14, 2011, the Ohio Board determined that Mr. Lundeen's "continued practice presents a danger of immediate and serious harm to the public" and issued an "Entry of Order" permanently revoking his license to practice medicine and surgery in Ohio.  [Dkt. 1-12; 21 at 2-3].[3]  Mr. Lundeen's suit in Ohio state court for judicial review of the Board's revocation resulted in final affirmance of the Ohio Board's decision.  *Lundeen v. State Medical Board of Ohio*, No. 11CV-16295, *Decision and Judgment Entry* (Franklin Co. Ct. of Common Pleas, June 28, 2012), *aff'd,* No. 12AP-629, 2013 WL 209136, 2013-Ohio-112 (Ohio Ct. App., January 17,

---

[3] The Ohio Board's orders of summary suspension and permanent revocation, and related documents, including the Board's hearing examiner's Report and Recommendation and the Ohio state-court decisions on Mr. Lundeen's suit for judicial review, may be found on the Ohio Board's webpage: https://license.ohio.gov/Lookup/SearchDetail.asp?ContactIdnt=2998250&DivisionIdnt=78&Type=L.

2013), *appeal not allowed*, 989 N.E.2d 1020, 2013-Ohio-2645 (Ohio, June 26, 2013).  *See also* *Amended Complaint* [dkt. 52] ¶¶ 3.18 – 3.22.

Upon learning of the Ohio Board's permanent revocation of Mr. Lundeen's medical license, the Attorney General of Indiana asked the Indiana Board to suspend Mr. Lundeen's license.  On February 10, 2012, after notice and a pre-deprivation hearing, the Indiana Board found that "an emergency exists and that [Mr. Lundeen] represents a clear and immediate danger to the public health and safety if allowed to practice medicine in the State of Indiana," *Summary Suspension Order* [dkt. 1-2, p. 1], and placed Mr. Lundeen's Indiana medical license on summary suspension for ninety days, pursuant to Indiana Code § 25-1-9-10, *id.*, p. 4.[4]  The defendant Executive Director of the Indiana Professional Licensing Agency signed the *Summary Suspension Order* on behalf of the Indiana Board.

Six days later, on February 16, 2012, Mr. Lundeen filed suit in Marion Superior Court in Marion County, Indiana, challenging the Indiana Board's ninety-day suspension.  The court dismissed the suit for lack of jurisdiction, *Amended Complaint* ¶3.27, and Mr. Lundeen did not pursue an appeal.

On March 8, 2012, the Attorney General of Indiana filed a complaint against Mr. Lundeen's medical license with the Indiana Board, asserting that his conduct

---

[4] Indiana Code § 25-1-9-10 authorizes the Board to "summarily suspend a practitioner's license for ninety (90) days before a final adjudication or during the appeals process if the board finds that a practitioner represents a clear and immediate danger to the public health and safety if the practitioner is allowed to continue to practice."

constituted a violation of Ind. Code § 25-1-9-4(a)(7)[5] based on the Ohio Board's summary suspension and permanent revocation of his medical license.  [Dkt. 1-5.]  The Attorney General asked the Indiana Board for "the appropriate disciplinary sanction."  *Id.*  On April 4, 2012, the Attorney General filed an amended complaint that was identical except for the deletion of one citation to the Indiana Code regarding penalty options.  [Dkt. 1-6.]

On April 26, 2012, the Indiana Board held an administrative hearing on the amended complaint.  Mr. Lundeen appeared in person.  On May 2, 2012, the Indiana Board found Mr. Lundeen in violation of Ind. Code § 25-1-9-4(a)(7) based on the Ohio Board's permanent disciplinary revocation of his medical license.  Pursuant to Ind. Code § 25-1-9-9(a)(2),[6] the Board placed Mr. Lundeen's medical license on indefinite suspension with the condition that he not petition for reinstatement until he submits proof that he holds an active medical license in Ohio.  The Board also required Mr. Lundeen to pay a fee of five dollars and a fine of $500, to be paid within 120 days.  [Dkt. 1-3.]

---

[5] "A practitioner shall conduct the practitioner's practice in accordance with the standards established by the board regulating the profession in question and is subject to the exercise of the disciplinary sanctions under section 9 of this chapter if, after a hearing, the board finds: . . . a practitioner has had disciplinary action taken against the practitioner or the practitioner's license to practice in any state or jurisdiction on grounds similar to those under this chapter."

[6] "The board may impose any of the following sanctions, singly or in combination, if it finds that a practitioner is subject to disciplinary sanctions under section 4 . . . of this chapter or IC 25-1-5-4:  (1) Permanently revoke a practitioner's license.  (2) Suspend a practitioner's license.  . . . (6) Assess a fine against the practitioner in an amount not to exceed one thousand dollars ($1,000) for each violation listed in section 4 of this chapter . . . ."

On May 22, 2012, Mr. Lundeen filed the present suit under 42 U.S.C. § 1983 against the defendant Executive Director of the IPLA, in his official capacity.  A second suit that he filed in April 2013 against the same defendant, which also challenges the suspension of his license, was consolidated with the present suit.

**The Amended Complaint**

On July 9, 2013, Mr. Lundeen filed an *Amended Complaint* [dkt. 52], which is the current operative complaint.  In Count I, he alleges that the Indiana Board's indefinite suspension of his medical license was in retaliation for his suit in the Marion Superior Court to vacate the Board's summary suspension and, therefore, violated his First Amendment rights to free speech and to petition for a redress of grievances.[7]  In Count II, Mr. Lundeen alleges that the suspension of his medical license by the Indiana Board violates the Eighth Amendment because he is being punished for a condition or status, that is, his status of having a permanently revoked Ohio medical license.  In Count III, he alleges that his initial ninety-day summary suspension violated the equal-protection clause of the Fourteenth Amendment because he was singled out for punishment without a rational basis.  Counts IV-VI allege that Mr. Lundeen had a protected property and liberty interest in his Indiana medical license and that it was suspended without due process in violation of the Fifth and Fourteenth Amendments because certain Indiana statutory procedures were not followed.

---

[7] Mr. Lundeen also alleges that Defendant, "via the Indiana Attorney General's office, affected [*sic*] or caused the filing of a new complaint against Lundeen's then temporarily suspended Indiana medical license.  This was followed quickly with an Amended Complaint." *Amended Complaint* ¶4.3.  Mr. Lundeen did not name the Attorney General of Indiana as a defendant.

Mr. Lundeen seeks declaratory and injunctive relief.  Specifically, he asks for an order declaring (1) that the Ohio Board's orders of immediate summary suspension and permanent revocation of his Ohio license are invalid, and (2) that the Indiana Board's May 2, 2012 indefinite suspension is void and vacated.  He also seeks an order requiring the Indiana Board to remove all references to his case from the public record.  Finally, he seeks a permanent injunction against Defendant taking any further disciplinary action against his medical license based on his practice of medicine in Ohio and from imposing any condition which restricts him from using or renewing his Indiana medical license.[8]

## Subject-Matter Jurisdiction

Defendant argues that this action must be dismissed for lack of subject-matter jurisdiction because Mr. Lundeen's claims are barred by the *Rooker-Feldman* doctrine, collateral estoppel, and the Eleventh Amendment.  When reviewing a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), "the district court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor."  *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001).  However, a court "may look beyond the allegations of the complaint and view whatever evidence has been submitted" to determine if it has subject-matter jurisdiction.  *Alicea-Hernanadez v. Catholic Bishop of Chicago*, 320 F.3d 698, 701 (7th Cir. 2003).  In this case, the Court takes judicial notice of the voluminous

---

[8] Mr. Lundeen supplemented the record with an e-mail that reflects that his (suspended) Indiana medical license and controlled-substance registration expired on October 31, 2013.  [Dkt. 74-1.]

administrative and court records related to this action, including those referenced in the complaint and those available publically.  *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012) (collecting cases); *In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006) (citing cases).

### 1. *Rooker-Feldman* Doctrine

Defendant argues that this Court lacks subject-matter jurisdiction over this action according to the *Rooker-Feldman* doctrine.  The doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 236 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  "Those decisions hold that only the Supreme Court of the United States may set aside a state court's decision in civil litigation."  *Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 818 (7th Cir. 2010).  Consequently, the *Rooker-Feldman* doctrine applies to cases that are brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and that invite district-court review and rejection of those judgments. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005).

Defendant argues that Mr. Lundeen's injuries are "inextricably intertwined" with the Ohio court's actions and, therefore, this Court lacks jurisdiction over his claims. Defendant is mistaken.  The *Rooker-Feldman* doctrine is not applicable to this action.  The Ohio trial court's judgment was rendered on June 28, 2012, after the complaint in this

Cause was filed on May 22, 2012.  *See Lundeen,* 2013 WL 209136, at *2.[9]  As the Supreme Court explained, "*Rooker-Feldman* is not triggered simply by the entry of judgment in state court."  *Exxon Mobil,* 544 U.S. at 292.  Instead, the disposition of the federal action, once the state-court adjudication is complete, is governed by preclusion law which is not a jurisdictional matter.  *Id.* at 293.  "In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court."  *Id.*  Because the state-court judgment at issue was not rendered before this federal suit was filed, the *Rooker-Feldman* doctrine does not apply.

### 2.  Collateral Estoppel

Next, Defendant argues that, even if the *Rooker-Feldman* doctrine does not divest this court of jurisdiction, then the doctrine of collateral estoppel applies as to any issues pertaining to the appropriateness of the Ohio courts' actions or the validity of their orders.  In response, Mr. Lundeen argues that collateral estoppel does not apply because the Ohio Board's December 14, 2011 Entry of Order was rendered in the absence of subject-matter jurisdiction by an incompetent tribunal and, thus, "does not support application of the doctrine of collateral estoppel anywhere, anytime or for any purpose."  [Dkt. 59 at p. 13.]

---

[9] The parties do not dispute that the *Rooker-Feldman* doctrine "has no application to judicial review of executive action, including determinations made by a state administrative agency." *Verizon Maryland Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 644 n. 3 (2002).

The rule of issue preclusion (often called collateral estoppel) is that the resolution of an issue in previous litigation between the same parties normally is conclusive of that issue in subsequent litigation. *DeGuelle v. Camilli*, 724 F.3d 933, 935 (7th Cir. 2013); *Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012). In this case, Defendant argues that collateral estoppel bars this Court from reconsidering issues previously determined by the Ohio state courts. "In determining when collateral estoppel applies [to a state-court's judgment] federal courts must look to state law and determine whether another state court would give preclusive effect to the prior proceeding." *Kunzelman v. Thompson*, 799 F.2d 1172 (7th Cir. 1986). Unfortunately, neither party addresses Ohio's doctrine of collateral estoppel which is controlling as applied to the Ohio state-court judgments. "[T]he statute that implements the full faith and credit clause, 28 U.S.C. § 1738, . . . requires federal as well as state courts to give state court judgments the same preclusive effect that the state courts that issued the judgments would give them." *DeGuelle*, 724 F.3d at 937. *See also Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 80-88 (1984) (in context of §1983 claim, state-court judgment has the same claim preclusive effect in federal court that the judgment would have in the state courts).

> "Under Ohio law, the doctrine of res judicata consists of 'the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.' " *Doe ex rel. Doe v. Jackson Local Schs. Sch. Dist.*, 422 Fed.Appx. 497, 500 (6th Cir. 2011) (quoting *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 862 N.E.2d 803, 806 (2007)). "'Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject of a previous action.'" *Id.* (citations omitted). The doctrine "bars subsequent actions

9

whose claims 'could have been litigated in the previous suit[.]' " *Id.* (alteration in original and citation omitted).

Issue preclusion, on the other hand, "prevents the 'relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies [,]' even if the causes of action differ." *Id.* (alteration in original and citation omitted).

*Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519-20 (6th Cir. 2011).

In this case, there is no dispute that the Ohio courts have finally adjudicated the validity of the Ohio Board's orders revoking Mr. Lundeen's Ohio medical license.  Mr. Lundeen's attacks on the Ohio Board's order were rejected by the trial court and on appeal, and the Ohio Supreme Court declined to review the matter initially and upon Mr. Lundeen's motion to reconsider.  *Lundeen v. State Medical Board of Ohio*, No. 11CV-16295, *Decision and Judgment Entry* (Franklin Co. Ct. of Common Pleas, June 28, 2012), *aff'd,* No. 12AP-629*, 2013 WL 209136, 2013-Ohio-112 (Ohio Ct. App., January 17, 2013), *appeal not allowed*, 989 N.E.2d 1020, 2013-Ohio-2645 (Ohio, June 26, 2013).  *See also Amended Complaint* ¶¶ 3.18 – 3.22; [dkt. 72-1].  However, under Ohio law, for collateral estoppel to apply to this case, the parties in this action must be the same as those in the prior state court case.  They are not.  The defendant Executive Director of the IPLA was not a defendant in Mr. Lundeen's Ohio state-court actions.  Nor does Defendant argue that he and the Ohio Board are in privity.  Under these circumstances, Defendant has not met his burden of proof and collateral estoppel does not apply.

That said, Defendant's arguments on collateral estoppel and Mr. Lundeen's responses bring up an obvious problem in this case.  Mr. Lundeen cannot attack the

decisions of the Ohio Board or the Ohio state courts in a meaningful way in this case because the sole defendant, the Executive Director of the IPLA, has nothing to do with the decisions of the Ohio Board or the Ohio state courts.  He was not a party to those proceedings nor can he be expected to defend those decisions.   Under these circumstances, this Court cannot grant Mr. Lundeen's request for a declaratory judgment finding that the Ohio Board's orders of summary suspension and permanent revocation of his Ohio license are invalid.  That relief is well outside the scope of this civil action, which is purportedly a claim for prospective injunctive relief against the Executive Director of the IPLA.

### 3.  Eleventh Amendment

Third, the Director argues that the Eleventh Amendment deprives this Court of subject-matter jurisdiction.[10]   Mr. Lundeen argues in response that the exception to Eleventh-Amendment immunity identified in *Ex Parte Young*, 209 U.S. 123 (1908), should apply to his claims.

Generally, the Eleventh Amendment deprives federal courts of subject-matter jurisdiction over claims against a state.  *Pennhurst State School & Hospital v. Halderman*,

---

[10] In support of his position that this action is barred by the Eleventh Amendment, Defendant cites *Crenshaw v. Supreme Court of Indiana*, 170 F.3d 725 (7th Cir.), *cert. denied*, 528 U.S. 871 (1999), which held that the Eleventh Amendment barred suit against the Indiana Supreme Court and the Disciplinary Commission in federal court.  But Defendant misses the point:  in *Crenshaw*, the Seventh Circuit did not dismiss the justices of the Indiana Supreme Court in their official capacities or the Disciplinary Commission's Executive Secretary in his or her official capacity based on the Eleventh Amendment.  Instead the claims against these defendants were dismissed without prejudice on abstention grounds which are not applicable to this case.  See *Entry Granting in Part and Denying in Part Motion To Dismiss* [dkt. 34] at p. 7 (discussing application of abstention doctrine to this case).

465 U.S. 89, 100 (1984). Because suits against state officials in their official capacities are deemed to be against the state itself, they are barred as well. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Meadows v. State of Indiana*, 854 F.2d 1068 (7th Cir. 1988). The rule of *Ex Parte Young* however, provides an exception to Eleventh-Amendment immunity such that a state official can be sued in his official capacity for injunctive relief if that state official administers a program in violation of the federal Constitution. *Watkins v. Blinzinger*, 789 F.2d 474, 484 (7th Cir. 1986). "[W]hen a state official violates the Constitution or federal law, he acts outside the scope of his authority and is no longer entitled to the State's immunity from suit." *Young*, 209 U.S. at 129. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *McDonough Associates, Inc. v. Grunloh,* 722 F.3d 1043, 1051 (7th Cir. 2013) (quoting *Verizon Maryland Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002), and *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)). Thus, the Court turns to Mr. Lundeen's claims in order to determine if he alleges an ongoing violation of federal law.

     **a.  Count I:  Retaliation.** In Count I of the amended complaint, Mr. Lundeen alleges that the Indiana Board infringed his First Amendment rights to speech and to petition for redress of grievances when it retaliated against him for filing a complaint in the Marion Superior Court seeking to invalidate the Indiana Board's summary

suspension.  The only fact that Mr. Lundeen alleges in support of this claim is time proximity:  his lawsuit challenging the Indiana Board's February 10, 2012 ninety-day summary suspension was filed on or about February 16, 2012, and the Indiana Attorney General's complaint for an appropriate final disciplinary sanction was filed with the Indiana Board on March 8, 2012, twenty-one days later.[11]  *Amended Complaint*, ¶¶ 4.2 – 4.8.  This conclusory allegation is not enough to allege a claim of retaliation especially when the Attorney General's complaint and the Board's indefinite suspension both logically followed the ninety-day temporary summary suspension.   Under these circumstances, there is no plausible basis to infer that the intervening state court case, rather than the Ohio Board's actions and the Indiana Board's summary suspension, was a motivating factor for the Attorney General's complaint or the Indiana Board's final decision.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly* , 550 U.S. 544 (2007); s*ee Kidwell v. Eisenhauer*, 679 F. 3d 957, 964 (7th Cir.) (to establish a *prima facie* case of retaliation, a plaintiff must allege that his speech was at least a motiving factor in the adverse action), *cert. denied.*, 133 S.Ct. 489 (2012).  In addition, state law protects Mr. Lundeen against arbitrary or retaliatory acts by the Indiana Board through the Indiana Administrative Orders and Procedures Act, Ind. Code ' 4-21.5-5, *et seq.* ("AOPA").  He could have pursued judicial review of the Indiana Board's allegedly retaliatory action but chose not to.

---

[11] As noted above, Mr. Lundeen appears to allege that the Indiana Board retaliated against him by both colluding with or causing the Indiana Attorney General to file the administrative complaint for final sanctions and imposing the final sanction of indefinite suspension.

As presented, the retaliation claim fails to allege "an ongoing violation of federal law" and, thus, the doctrine of *Ex parte Young* does not apply and the Eleventh Amendment divests this court of jurisdiction over this claim.

**b.  Count II – Eighth Amendment.**  In Count II of his *Amended Complaint*, Mr. Lundeen alleges that the suspension of his medical license by the Indiana Board violates the Eighth Amendment.  This claim is frivolous.  The Eighth Amendment applies only to convicted persons, s*ee Rosario v. Brawn*, 670 F.3d 816, 820-21 (7th Cir. 2012); *Cain v. State of Arkansas*, 734 F.2d 377 (8th Cir. 1984) (physician's argument that civil revocation of his podiatry license was cruel and unusual punishment under the Eighth Amendment was without merit), which Mr. Lundeen is not.  He argues that he, like the criminal defendant in *Robinson v. California,* 370 U.S. 660 (1962), was punished based on a state statute that criminalized a person's status, in violation of the Eighth Amendment.  In *Robinson,* the statute at issue made it a criminal offense for a person to be addicted to the use of narcotics, i*d.* at 660, but *Robinson*'s holding does not support Mr. Lundeen's claim.  He has not brought this civil action as a criminal defendant nor does he attack a law which criminalized his status.  Accordingly, Count II fails to allege "an ongoing violation of federal law" and the Eleventh Amendment bars this claim.

**c.  Count III -- Equal Protection.**  In Count III, Mr. Lundeen alleges that the Indiana Board's ninety-day summary suspension violated the Equal Protection Clause because he was singled out for punishment without a rational basis.  The Board's February 10, 2012, *Summary Suspension Order* states that it is imposed pursuant to Ind.

Code § 4-21.5-4-1, *et seq.*, and § 25-1-9-10.  [Dkt. 1-2 at 1.]  This order specifies that the Board "finds that an emergency exists and that the Respondent represents a clear and immediate danger to the public health and safety if allowed to practice medicine in the State of Indiana." *Id.*

Mr. Lundeen's equal-protection claim is difficult to follow.  He states in his response to the motion to dismiss that he "has alleged equal protection ('EP') violations based on a class-of-one and on over-inclusion with those physicians against whom allegations of misconduct have been made and who have suffered related discipline." [Dkt. 59 at 27.]  In addition, "Lundeen alleges that the Defendant inflicted an EP violation of a class-of-one type when the game changed after February 16, 2012, to 'get Lundeen,' which occurred on March 8, 2012, after Lundeen's court filing in Marion County Superior Court a mere three weeks prior."  *Id.* at 28.[12]

In the Seventh Circuit, an individual may state a claim under the Equal Protection Clause if he can show that state government took an action that "was a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective."  *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995).  The Equal Protection Clause provides a remedy when a "powerful public official pick[s] on a person out of sheer vindictiveness."  *Id.* at 178.  This type of discrimination has been characterized as the creation of a "class of one."  *Indiana State Teachers Ass'n v. Board of School Comm'rs of the City of Indianapolis*, 101 F.3d 1179, 1181-82 (7th Cir. 1996).  To succeed, a plaintiff

---

[12] To the extent this claim is just a restatement of the retaliation claim, it also is barred by the Eleventh Amendment for the reasons previously explained.

must show that the government is treating unequally those individuals who are *prima facie* identical in all relevant respects, *see id.*, and that the cause of the differential treatment is a "totally illegitimate animus toward the plaintiff by the defendant." *Olech v. Village of Willowbrook*, 160 F.3d 386, 388 (7th Cir. 1998), *judgment affirmed on other grounds*, 528 U.S. 562 (2000).

Mr. Lundeen has not alleged any facts making a *prima facie* showing that he was treated differently than other individuals who were identical to him in all relevant respects, *i.e.*, that he was treated differently than other holders of Indiana medical licenses who had medical licenses from other states suspended or revoked.  Further, there can be no dispute that Indiana has an interest in protecting its citizens from harm and that it has a rational reason for reciprocally suspending the medical licenses of doctors whose licenses in other states have been revoked.  The United States Supreme Court has explained that a "statute which places all physicians in a single class, and prescribes a uniform standard of professional attainment and conduct, as a condition of the practice of their profession, and a reasonable procedure applicable to them as a class to insure [*sic*] conformity to that standard, does not deny the equal protection of the laws within the meaning of the Fourteenth Amendment."  *State of Missouri ex rel. Hurwitz v. North*, 271 U.S. 40, 43 (1926).

For these reasons, Count III of the *Amended Complaint* fails to allege "an ongoing violation of federal law" and, thus, the doctrine of *Ex parte Young* does not apply and the Eleventh Amendment bars Mr. Lundeen's equal-protection claims.

16

**d.  Counts IV, V, and VI -- Due Process.**  Counts IV, V, and VI allege that Mr. Lundeen had protected property and liberty interests in his Indiana medical license and the Indiana Board's indefinite suspension violated his due-process rights because certain state statutory procedures were not followed.  Defendant argues that Counts IV, V, and VI must be dismissed because Mr. Lundeen was afforded due process at the hearing before the Indiana Board, and by not complying with AOPA, he has waived any claim that he was denied due process.

The Due Process Clause is triggered when a government deprives an individual of life, liberty, or property, *Kentucky Depart. of Corrections v. Thompson,* 490 U.S. 454, 459-60 (1989), and requires the government to follow certain procedures before, during, or after the government deprives the individual of his life, liberty, or property, *Zinermon v. Burch,* 494 U.S. 113, 127-130 (U.S. 1990).[13]  For the purposes of the present

---

13

    Due process, as this Court often has said, is a flexible concept that varies with the particular situation.  To determine what procedural protections the Constitution requires in a particular case, we weigh several factors:

    "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural  requirement would entail."

    Applying this test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property.

    In some circumstances, however, the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process.

motion to dismiss, the Court assumes that Mr. Lundeen had a property interest in his

---

This is where the *Parratt* rule comes into play. *Parratt* and *Hudson* represent a special case of the general *Mathews v. Eldridge* analysis, in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide. In *Parratt,* a state prisoner brought a § 1983 action because prison employees negligently had lost materials he had ordered by mail. The prisoner did not dispute that he had a postdeprivation remedy. Under state law, a tort-claim procedure was available by which he could have recovered the value of the materials. This Court ruled that the tort remedy was all the process the prisoner was due, because any predeprivation procedural safeguards that the State did provide, or could have provided, would not address the risk of *this kind* of deprivation. The very nature of a negligent loss of property made it impossible for the State to predict such deprivations and provide predeprivation process. The Court explained:

> "The justifications which we have found sufficient to uphold takings of property without any predeprivation process are applicable to a situation such as the present one involving a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee. In such a case, the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." Given these special circumstances, it was clear that the State, by making available a tort remedy that could adequately redress the loss, had given the prisoner the process he was due. Thus, *Parratt* is not an exception to the *Mathews* balancing test, but rather an application of that test to the unusual case in which one of the variables in the *Mathews* equation-the value of predeprivation safeguards-is negligible in preventing the kind of deprivation at issue. Therefore, no matter how significant the private interest at stake and the risk of its erroneous deprivation, the State cannot be required constitutionally to do the impossible by providing predeprivation process.

In *Hudson,* the Court extended this reasoning to an intentional deprivation of property. A prisoner alleged that, during a search of his prison cell, a guard deliberately and maliciously destroyed some of his property, including legal papers. Again, there was a tort remedy by which the prisoner could have been compensated. In *Hudson,* as in *Parratt,* the state official was not acting pursuant to any established state procedure, but, instead, was apparently pursuing a random, unauthorized personal vendetta against the prisoner. The Court pointed out: "The state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct." Of course, the fact that the guard's conduct was intentional meant that he himself could "foresee" the wrongful deprivation and could prevent it simply by refraining from his misconduct. Nonetheless, the Court found that an individual state employee's ability to foresee the deprivation is "of no consequence," because the proper inquiry under *Parratt* is "whether the *state* is in a position to provide for predeprivation process."

*Zinermon,* 494 U.S. at 127-130 (citations and footnotes omitted).

Indiana medical license and that, therefore, that the Indiana Board could not indefinitely suspend his license without following procedures required by due process.

Mr. Lundeen alleges that the Indiana Board deprived him of procedural due process by:   (1) failing to strictly comply with Indiana statutory requirements, specifically by failing to have, and to state on the record that it had, a certified copy of the Ohio Board's disciplinary actions (Count IV); (2) failing to have record evidence that the Ohio Board's disciplinary revocation order, which stated that it would become effective upon mailing, had, in fact, become effective by having been mailed (Count V); and (3) suspending his license based on the Ohio Board's revocation order which was void for failure to follow Ohio state-law procedural requirements regarding the manner of mailing (Count VI).   Mr. Lundeen contends that he can challenge the validity of the Ohio Board's decision in Count VI because, if it is invalid, then the Indiana Board never obtained subject-matter jurisdiction to discipline him under Indiana Code § 25-1-9.[14]

None of these counts, as pled and argued by Mr. Lundeen, state a violation of due process.   The procedural requirements of Fourteenth Amendment due process are independent of procedures mandated by state law; in other words, the federal Due Process Clause does not enforce compliance with state procedures.   *Mann v. Vogel*, 707 F.3d 872, 882 (7th Cir. 2013); *Archie v. City of Racine*, 847 F.2d 1211, 1216, 1217 (7th Cir.

---

[14] Thus, he asserts that he "has standing to request judicial review of the applicable Ohio statutes, applicable Ohio case law and evidence of the manner of service and praying for an order that the Ohio orders is/are void and thus barring the effect of such Ohio order(s) in Indiana for all purposes." *Amended Complaint* ¶ 9.3.

1988);[15] *Scott v. Village of Kewaskum*, 786 F.3d 338, 342 (7th Cir. 1986) (citing *Olim v. Wakinekona*, 461 U.S. 238 (1983)).  See also *Maddox v. Stephens*, 727 F.3d 1109, 1124 n. 15 (11th Cir. 2013), and *United States v. Laville*, 480 F.3d 187, 192 -93 (3rd Cir. 2007). Further, the Due Process Clause requires only a minimum, a threshold, of procedures; it does not prohibit additional state procedures nor guarantee error-free results.  *Browning v. Hand*, 284 F.2d 346, 348 (10th Cir. 1960).  A court analyzes existing state procedures only to determine whether they provide the minimum of procedures required by due process.

The *Amended Complaint*'s Counts IV and V allege only Defendant's failure to follow Indiana state-law requirements and Mr. Lundeen's response to the present motion to dismiss argues only the same.  Neither the *Amended Complaint* nor Mr. Lundeen's arguments identify, or provide any legal authority for, any pre- or post-deprivation procedures mandated by the Due Process Clause that were not afforded to him.  Count VI alleges that the Ohio Board's revocation of Mr. Lundeen's Ohio license was invalid for failure to follow Ohio state-law requirements and, therefore, the Indiana Board lacked subject-matter jurisdiction to revoke his Indiana license under the pertinent Indiana statutes.  Neither Count VI nor Mr. Lundeen's arguments in response to the present motion articulate or suggest any procedure mandated by due process that

---

[15] "Mere violation of a state statute does not infringe the federal Constitution. . . .  A state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law.  State rather than federal courts are the appropriate institutions to enforce state rules.  Indeed, 'it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.'"  *Archie*, 847 F.2d at 1216, 1217.

Indiana or Ohio failed to afford him.  In addition, as noted above, Mr. Lundeen's challenges to the validity, under Ohio law, of the Ohio Board's revocation have received final adjudication in the Ohio state courts and an appeal therefrom lies to the United States Supreme Court, not to this Court.  Because Counts IV, V, and VI do not identify due-process violations, they fail to state plausible, viable claims.[16]

**Conclusion**

Because the *Amended Complaint* fails to identify an ongoing violation of federal law, it is barred by the Eleventh Amendment and fails to state a claim and will be dismissed.  In addition, Mr. Lundeen's second motion for a preliminary injunction [dkt. 64] is **DENIED**.

Because Mr. Lundeen is proceeding *pro se* in this Cause, he is afforded one opportunity to file a motion for leave to file a second amended complaint that corrects the deficiencies addressed herein **no later than January 24, 2014**.  *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024-25 (7th Cir. 2013); *Arnett v. Webster*, 658 F.3d 742, 754-57 (2011).

---

[16] The Court notes that, although Mr. Lundeen complains that the Indiana Board failed to comply with state-law procedures when it indefinitely suspended his license, he failed to take the opportunity afforded to him by state law to obtain review of any procedural or constitutional defects.  See Ind. Code § 4-21.5-5 *et seq.*; *Reedus v. Indiana Dept. of Workforce Development*, 900 N.E.2d 481, 487 (Ind. Ct. App. 2009).

**The Clerk of Court is directed** to amend the caption to identify Nicholas Rhoad

as the defendant, pursuant to Fed. R. Civ. P. 25(d).

**DONE this date:**  01/07/2014


Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana


Distribution:

*via* first-class mail:
James E. Lundeen, Sr.
120 Hawthorne Lake Drive
Bloomington, Illinois  61704

Distribution to all ECF-registered counsel *via* ECF-generated e-mail.