UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES E. LUNDEEN, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) CAUSE NO. 1:12-cv-696-DKL-SEB |
| NICHOLAS RHOAD, Executive Director | ) |
| of the Indiana Professional Licensing | ) |
| Agency, in his official capacity, | ) |
| | ) |
| Defendant. | ) |

### ENTRY

**Plaintiff's *Motion for Leave To File Verified
Second Amended Complaint*  [doc. 77]**

The Court previously dismissed, without prejudice, the *Amended Complaint* in this Cause, *Order of Dismissal of Amended Complaint* [doc. 76], and afforded plaintiff James E. Lundeen, Sr., one opportunity to seek leave to file an amended complaint "that corrects the deficiencies addressed" in the Court's accompanying *Entry* of January 7, 2014 [doc. 75] at 21. Now before the Court is Mr. Lundeen's motion for leave to file that invited amended complaint.

In its *Entry*, the Court stated that counts 1, 2, and 3 of the *Amended Complaint* were barred by the Eleventh Amendment because they failed to allege "ongoing violations of federal law." *Entry* at 12-16. The Court found that those counts failed to adequately and plausibly allege the substance of Constitutional violations, not that they failed to adequately allege that those violations were ongoing or continuing. *Id.* The Court dismissed counts 4, 5, and 6 for failure to state deprivations of federal due

1

process rights. *Id.* at 17-21. The Court concluded that, "[b]ecause the *Amended Complaint* fails to identify an ongoing violation of federal law, it is barred by the Eleventh Amendment and fails to state a claim . . . ." *Id.* at 21.

**Discussion**

In addition to modifying the original allegations of the *Amended Complaint*, Mr. Lundeen's proposed *Verified Second Amended Complaint* [doc. 77-3] ("*Proposed Complaint*") adds three new defendants; adds that present sole defendant Nicholas Rhoad is sued in his individual capacity, as well as his official capacity;[1] drops his Eighth Amendment claim (count 2), and adds four new counts. Familiarity with the *Entry* is assumed in the following discussion.

**New defendants, claims, and capacity.**

The Court afforded Mr. Lundeen an opportunity only to "file a motion for leave to file a second amended complaint that corrects the deficiencies addressed herein . . . ." *Entry* at 21. He was not allowed leave to add parties, claims, or capacities. Mr. Lundeen has had ample opportunity to plead all claims he has against all defendants that he desires in this Cause and he was already granted leave to file his *Amended Complaint*. He points to no new evidence that explains or justifies his failure to plead the new claims or join the new defendants before now, particularly in light of Defendant's motion to dismiss filed back in July 2013. For this reason, leave is denied to

---

[1] It is unclear whether Mr. Lundeen actually intends to add individual-capacity claims against defendant Rhoad. While the proposed complaint's caption and party descriptions state that Mr. Rhoad is sued in his official and individuals capacities, proposed *Verified Second Amended Complaint*, caption and ¶ 2.1, damages are sought, by name, from only the three new defendants, *id.* at 4 and ¶ 13.1(C).

plead the *Proposed Complaint*'s **(1)** new claims (counts 2, 7, 8, and 9, and part of count 1), **(2)** new defendants (Stephen Huddleston, Amber Swartzell, and Frances L. Kelly), and **(3)** individual-capacity claims against defendant Nicholas Rhoad.[2]

**Count 1, First Amendment retaliation.**

In count 1 of the *Amended Complaint*, Mr. Lundeen alleged that the Medical Licensing Board of Indiana ("Indiana Board" or "Board") indefinitely suspended his medical license as retaliation for his state-court suit that challenged the Board's earlier summary ninety-day suspension of his license. Mr. Lundeen claimed that the alleged retaliation violated his First Amendment free-speech and petition rights.

A brief background will facilitate this discussion; fuller details are in the Court's *Entry*. On December 14, 2011, seven months after summarily suspending Mr. Lundeen's Ohio medical license, the State Medical Board of Ohio ("Ohio Board") permanently revoked his medical license, finding that his "continued practice presents a danger of immediate and serious harm to the public." After learning of the Ohio revocation, the Attorney General of Indiana filed a complaint with the Indiana Board, asking it to suspend Mr. Lundeen's Indiana medical license. On February 10, 2012, after a hearing, the Indiana Board suspended Mr. Lundeen's Indiana license pursuant to an Indiana statute authorizing the Board to "summarily suspend a practitioner's license for

---

[2] On April 10, 2014, Mr. Lundeen initiated a new Cause in this Court, *Lundeen v. Rhoad*, Cause No. 1:14-cv-547-SEB-MJD, by filing a complaint which is almost identical, in substance, to his proposed amended complaint here. (One difference is that the complaint in the new Cause includes Mr. Rhoad in its demand for damages relief against the defendants in their individual capacities.) It will be for the judge assigned to that case to determine the preclusive effect, if any, of the rulings and judgment in this Cause.

3

ninety (90) days before a final adjudication or during the appeals process if the board finds that a practitioner represents a clear and immediate danger to the public health and safety if the practitioner is allowed to continue to practice." Six days later, on February 16, 2012, Mr. Lundeen filed suit in Marion Superior Court in Marion County, Indiana, challenging the Indiana Board's summary suspension. Twenty-one days later, on March 8, 2012, the Attorney General of Indiana filed a complaint with the Indiana Board for final action against Mr. Lundeen's medical license pursuant to an Indiana statute authorizing disciplinary sanctions if the Board finds that another state has taken disciplinary action against the practitioner's license in that state. The complaint asked for "the appropriate disciplinary sanction." The Indiana Board held a hearing on April 26, 2012 and, on May 2, 2012, it placed Mr. Lundeen's medical license on indefinite conditional suspension.

The *Entry* found that the only fact alleged in count 1 to show that the Indiana Board's final suspension was motivated by retaliation was time proximity – the twenty-one days between the filings of Mr. Lundeen's state-court suit and the Attorney General's complaint for final discipline – and the Court rejected the plausibility of that allegation:

> This conclusory allegation is not enough to allege a claim of retaliation especially when the Attorney General's complaint and the Board's indefinite suspension both logically followed the ninety-day temporary summary suspension. Under these circumstances, there is no plausible basis to infer that the intervening state court case, rather than the Ohio Board's actions and the Indiana Board's summary suspension, was a motivating factor for the Attorney General's complaint or the Indiana Board's final decision.

4

*Entry* at 13.

Mr. Lundeen's *Proposed Complaint* adds factual allegations and another legal theory to count 1, none of which corrects the deficiency found by the Court. Mr. Lundeen adds the allegation that Stephen Huddleston, the president of the Indiana Board and presiding officer at Mr. Lundeen's April 26, 2012 hearing, made a hand gesture to the reporter to cease recording a portion of the hearing when Mr. Huddleston stated that the summary suspension at issue was non-disciplinary and that no fee or fine would be imposed. On receiving a copy of the transcript, Mr. Lundeen discovered that Mr. Huddleston's comment was missing. Mr. Lundeen makes three uses of this allegation.

First, he asserts that the interrupted recording is another reason for the Indiana Board's and/or the Attorney General's retaliation against him because he "state[d] to the Marion Superior Court that Huddleston had tampered with or truncated the recording of proceedings" during his hearing. *Proposed Complaint* ¶ 4.13. Regardless of the fact that this represents a new factual allegation of retaliation which was not permitted by the *Entry*, it merely alleges another ground for retaliation but fails to address the *Entry*'s ruling that the time proximity between Mr. Lundeen's state-court suit and the Attorney General's complaint for final discipline does not plausibly allege retaliation.

Second, Mr. Lundeen claims that the decision to not record Mr. Huddleston's comment violated his due-process right to have a proceeding recorded. *Id.* ¶¶ 4.15,

4.26, and 4.27. This addition does not save count 1. First, the *Entry* did not grant leave to add a new Fourteenth Amendment due-process claim to count 1's First-Amendment retaliation claim. Second, Mr. Lundeen alleges no injury from the failure to record Mr. Huddleston's comment. There is no allegation that Mr. Huddleston's comment was an incorrect description of the nature of the summary-suspension proceeding, that Mr. Huddleston or the Board later disavowed the comment, or that the failure to have the comment recorded caused any prejudice to Mr. Lundeen.

Third, Mr. Lundeen asserts that, because the summary ninety-day suspension was not disciplinary according to Mr. Huddleston's unrecorded statement at the hearing, the Board's later, final indefinite suspension of his license "was not a natural result of the first order of February 10, 2012, -- a non-disciplinary suspension does not naturally lead to a conditional indefinite disciplinary suspension." *Id.* ¶ 4.18. This is not a new claim but, apparently, is an argument against the Court's finding that it is equally, even more, plausible that Mr. Lundeen's final indefinite suspension was a result of the permanent revocation of Mr. Lundeen's Ohio license and the disciplinary process and investigation that was initiated by the Attorney General's complaint and the Board's summary ninety-day suspension, rather than retaliation for Mr. Lundeen's state-court suit. Mr. Lundeen does not allege any rational, plausible basis for inferring that Mr. Huddleston's description of Mr. Lundeen's ninety-day suspension as non-disciplinary shows that the Indiana Board's later final indefinite suspension of Mr. Lundeen's license was retaliatory and not the result of the Board's investigation of the

revocation of Mr. Lundeen's Ohio license.

Therefore, the Court finds that count 1 of the *Proposed Complaint* fails to correct the deficiency that the Court found in the same count of the *Amended Complaint* and otherwise fails to state a claim for retaliation under the First Amendment. Because pleading this count would be futile, leave to amend is denied. The Court modifies its earlier *Entry* by clarifying that count 1 was dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim of a Constitutional violation, rather than under Rule 12(b)(1) for lack of subject-matter jurisdiction. This modification conforms the conclusion to the discussion. The Court did not and does not find that the *Amended Complaint* or the *Proposed Complaint* fails to allege the "ongoing" element of the *Young* exception to the Eleventh Amendment for prospective relief.

**Count 3, equal protection.**

In the *Amended Complaint*, Mr. Lundeen alleged four facts in support of his equal-protection claim. The first three are: **(1)** Mr. Huddleston's statement at the initial, summary-suspension hearing that "the 90 day suspension was not a disciplinary action and that the board did not want Lundeen to use his license," *Amended Complaint* ¶ 6.2; **(2)** Mr. Huddleston's direction, *via* a hand gesture to the reporter, to not record that statement, *id*, ¶ 6.6; and **(3)** the absence of any citation of misconduct by Mr. Lundeen throughout the disciplinary process, *id.* ¶¶6.3 and 6.5. From these first three facts, Mr. Lundeen argued that the use of a disciplinary statute to impose disciplinary sanction (his ninety-day summary suspension) during a "non-disciplinary action" (according to

7

Mr. Huddleston's alleged statement) and without any citation of misconduct is *prima facie* evidence of an equal-protection violation of over-inclusion because Indiana statutes do not authorize non-disciplinary suspensions. The fourth fact alleged in support of count 3 was conclusory: on Mr. Lundeen's "information and belief," he was "singled out for punishment without a rational basis" as a class of one. *Id.* ¶6.9 and 6.11.

The *Entry* found that Mr. Lundeen had failed to allege that the Indiana Board treated him unequally to other individuals who were *prima facie* identical to him in all relevant respects and that the cause of the differential treatment was illegitimate animus toward him. The Court also ruled that there could be no dispute that Indiana has a legitimate state interest in reciprocally suspending the medical licenses of doctors whose licenses in other states have been revoked.

In the *Proposed Complaint*, Mr. Lundeen adds emphases to previous allegations and adds new allegations, none of which corrects the deficiencies that the Court found in his equal-protection claim. First, Mr. Lundeen makes a few new allegations about the Indiana Board's issuance of his medical license. He alleges that the Indiana Board issued his license after an exhaustive application process; after the Ohio Board's summary suspension of his Ohio license; after finding no basis for the Ohio Board's "danger statement " regarding Lundeen's practice of medicine; and that defendant Rhoad (or, the Indiana Board) was aware of the Ohio Board's "danger statement" and that it related only to alleged building conditions in one of his several Ohio offices, not to his practice of medicine. The conclusion or ultimate inference that Mr. Lundeen

8

attempts to support is that the Ohio Board's suspension and revocation of his Ohio license were not, in fact, the cause or impetus for the Indiana Board's suspensions of his Indiana license; therefore, without a legal basis for the Indiana Board's actions, his assertion that the Board "singled him out for punishment without a rational basis," *Proposed Complaint* ¶¶ 6.28 and 6.33, is rendered plausible. The Court is unconvinced.

Mr. Lundeen identifies the "danger statement" as "a particular phrase which was uttered by The State Medical Board of Ohio on May 11, 2011, and upon which all of the actions of the Medical Licensing Board ("MLB") of Indiana have relied for subject matter jurisdiction in [the Indiana Board's disciplinary proceedings]." *Proposed Complaint* ¶ 6.5; *Affidavit of James E. Lundeen, Sr.* [doc. 77-7] ("*Lundeen Affidavit*") ¶ 4. The phrase that Mr. Lundeen cites is in a press release issued by the Ohio Board on the date that it summarily suspended his Ohio medical license: ". . . and his continued practice presents a danger of immediate and serious harm to the public." *Lundeen Affidavit* ¶ 5; State Medical Board of Ohio News Release, *Medical Board Summarily Suspends License of Dr. James Lundeen Sr.* [doc. 77-8] ("*News Release*"). The sentence in which the phrase appears leads the *News Release* and reads in full:

> On May 11, 2011, the State Medical Board of Ohio summarily suspended the medical license of James E. Lundeen, Sr., MD, after determining that there is clear and convincing evidence that Dr. Lundeen violated the Medical Practice Act and his continued practice presents a danger of immediate and serious harm to the public.

There follow three paragraph reciting some of the violations. The first paragraph relates that Mr. Lundeen failed to conduct appropriate physical examinations; excessively and inappropriately prescribed narcotic pain medications and other drugs

9

of abuse despite indications of possible addictions, drug abuse, or diversion by some patients; prescribed increasing dosages of narcotics not supported by any objective change in the patients' medical statuses; and administered medical management and/or treatments not appropriate to the patients' diagnoses or clinical situations. The second paragraph notes practices that are atypical from standard medical practice, including maintaining approximately twelve offices across the state, seeing ninety patients per day in one office with thirty to forty people waiting at one time, and a high percentage of patients receiving controlled substances. In the third paragraph, the *News Release* describes that a raid on one of Mr. Lundeen's offices showed that he "failed to maintain the office in a clean, sanitary, or safe condition" and "failed to adequately or appropriately equip and supply" the medical office. The Ohio Board's official *Notice of Summary Suspension and Opportunity for Hearing* of May 11, 2011 ("*Ohio Summary Suspension*") includes these and more findings and gives additional details.

There is no reasonable basis in the *News Release* or the *Ohio Summary Suspension* for Mr. Lundeen's interpretation that the Ohio Board's "danger statement" was based solely, or even primarily, on the "building conditions" at his one raided medical office. There is no reasonable basis to infer, from any of the allegations in the *Proposed Complaint* or in any of the records of the Indiana Board's decisions that have been submitted in this case, that the Indiana Board's issuance, summary suspension, or indefinite suspension of Mr. Lundeen's license was based solely, or primarily, on any understanding that the "danger statement" in the *News Release* was based solely on the

10

"building conditions" at his one raided Ohio medical office. Further, there is no rational basis to infer that the Indiana Board's suspensions of Mr. Lundeen's license were based solely or primarily on the *News Release* or the "building conditions" at his one raided office. In short, Mr. Lundeen's contrary allegations and inferences are implausible, fantastic, and unreasonable.[3]

Second, Mr. Lundeen alleges that the Indiana Board suspended his medical license with no finding or citation of misconduct, misrepresentation, or misuse of his license. *Proposed Complaint* ¶¶ 6.4, 6.18, 6.20. Again, the inference or conclusion is that, without a finding of misconduct involving Mr. Lundeen's practice of medicine in Indiana, the Indiana Board's actions must have been motivated by "totally illegitimate animus." *Id.* ¶ 6.37. However, the Indiana statute authorizing summary suspensions, Ind. Code 25-1-9-10, provides for summary suspensions pending a "final adjudication . . . . if the board finds that a practitioner represents a clear and immediate danger to the public health and safety if the practitioner is allowed to continue to practice." It does not require that any finding of danger be based on conduct involving the practitioner's practice of medicine in Indiana and the statutes authorizing the referenced "final adjudication" provide for the imposition of discipline based on disciplinary action taken against a practitioner's license in another state, Ind. Code §§ 25-1-9-4(a)(7) and 25-

---

[3] As addressed in the *Entry*, the Indiana statutes under which the Indiana Board acted specifically allow for the imposition of reciprocal discipline based on discipline imposed by other states. There is no dispute that the Ohio Board suspended and revoked Mr. Lundeen's Ohio license and that the Indiana Board was aware of the same. To the extent that Mr. Lundeen seeks to challenge the Indiana Board's reliance on the Ohio Board's findings by contesting the reliability of the Ohio findings, the Court notes that it is not the purpose of equal protection to guarantee accurate outcomes, only outcomes untainted by unequal treatment.

1-9-9(a)(2), which logically includes the findings supporting the other state's discipline. It would not be reasonable to interpret the standard for summary suspension to be stricter than the standard for final discipline. The Indiana Board's summary and final indefinite suspensions of Mr. Lundeen's medical license were imposed pursuant to these statutes that specifically authorize reciprocal discipline. In addition, Mr. Lundeen does not allege that the Board refuses to impose reciprocal discipline on other similarly-situated physicians. Thus, Mr. Lundeen's inferences are unreasonable and implausible and do not state a claim for deprivation of equal protection.

Third, Mr. Lundeen repeats in this count his allegations that Mr. Huddleston stated at the initial hearing that the summary-suspension proceedings were not disciplinary and directed that his statement not be recorded. From these allegations, he draws two inferences or claims. First, he repeats his claim that the Board's "tampering with the recording" violates due process, *Proposed Complaint* ¶¶ 6.22, 6.23, but Mr. Lundeen was not granted leave to add this new claim. Second, apparently assuming that Mr. Huddleston's statement (if made) had the effect of permanently converting the legal nature of the summary-suspension proceedings, he asserts that there was no legal basis for it because Indiana statutes do not authorize a summary suspension for non-disciplinary reasons. Thus, he claims that the Board's summary ninety-day suspension was illegal, *id.* ¶¶ 6.18, 6.19, 6.31, and a violation of equal protection, *id.* ¶ 6.35, presumably because the absence of legal authority supports his assertion that the Board singled him out for punitive sanctions without a rational basis. Mr. Lundeen's

arguments and claims are not plausible.

The first paragraph of the Indiana Attorney General's *Petition for Summary Suspension* [doc. 1-4] cites the Indiana statute authorizing summary suspensions, Ind. Code §25-1-9-10, and the Indiana Board's ninety-day suspension order states that the Board's suspension is pursuant to that statute and based on the Ohio Board's summary suspension and final revocation of Mr. Lundeen's Ohio license, *Summary Suspension Order* [doc. 1-2]. The Indiana Board's ninety-day suspension order states that it is a "NON-FINAL emergency order" and that the Board finds that Mr. Lundeen "represents a clear and immediate danger to the public health and safety if allowed to practice medicine in the State of Indiana." *Id.* Mr. Lundeen does not allege that the hearing did not address the Ohio revocation or arguments for and against the Indiana Board imposing a summary suspension pending final reciprocal discipline. Mr. Lundeen does not allege that he was surprised by the Indiana Board's action or that he suffered any practical prejudice from Mr. Huddleston's alleged statement. He has not alleged that the Indiana statutes did not authorize the Board's actions. While he characterizes the Board's summary suspension as illegal because Mr. Huddleston allegedly stated at the hearing that the proceedings were non-disciplinary, there is no dispute that the *Petition* and the *Summary Suspension Order* cited proper legal authority for the requested and imposed summary suspension and there is no allegation that the proceedings or Mr. Lundeen's participation therein would have been different. Therefore, Mr. Lundeen fails to allege any injury from Mr. Huddleston's statement or, therefore, any equal-

protection deprivation.

Moreover, the summary suspension was temporary and eventually was replaced or superseded by the indefinite suspension. Thus, even if Mr. Lundeen's inferences and arguments were credited regarding Mr. Huddleston's statement, he complains about a past action of the Board from which he is not alleging any ongoing or continuing injury. If he is suffering a Constitutional deprivation now, it is the result of the Board's final indefinite suspension of his medical license, not its earlier, temporary suspension. Mr. Lundeen, himself, alleges that the two suspensions are independent[4] and that the final indefinite suspension superseded the temporary suspension.[5] Any claim against Mr. Rhoad based on the Indiana Board's ninety-day suspension of his license is not based on an ongoing violation that can be remedied with prospective relief and, thus, is barred by the Eleventh Amendment.

Therefore, the Court finds that the *Proposed Complaint*'s pleading of this count is futile because it fails to state a claim for deprivation of Mr. Lundeen's right to equal protection and, to the extent of any claim based on the Indiana Board's summary ninety-day suspension, also because it is barred by the Eleventh Amendment. Therefore, leave to amend this count is denied. The Court modifies its earlier *Entry* by clarifying that count 3 was dismissed pursuant to both Fed. R. Civ. P. 12(b)(6), for failure to state a claim and, to the extent of any equal-protection claim based on the

---

[4] "Therefore, the May 02, 2012, order was not a natural result of the first order of February 10, 2012, -- a non-disciplinary suspension does not naturally lead to a conditional indefinite disciplinary suspension." *Proposed Complaint* ¶ 4.18.

[5] *Proposed Complaint* ¶ 7.11.

Indiana Board's summary ninety-day suspension, the Eleventh Amendment, rather than under Rule 12(b)(1) for lack of subject-matter jurisdiction. This modification conforms the conclusion to the discussion.

**Count 4, due process.**

Count 4 of the *Amended Complaint* alleged that the Indiana Board violated Mr. Lundeen's due-process rights by failing to strictly follow state statutes and procedures. The *Entry* dismissed this count because Constitutional due process does not enforce compliance with state procedures. The *Proposed Complaint* adds allegations that defendant Rhoad "knowingly or recklessly made false statements that Lundeen is an imminent danger to patients if he is permitted to practice medicine . . . ." *Proposed Complaint* ¶ 7.4. The allegedly defamatory "statements" by Mr. Rhoad are the two decisions of the Indiana Board summarily and indefinitely suspending Mr. Lundeen's license. *Proposed Complaint* ¶ 7.11. These "statements" were knowingly or recklessly false because Mr. Rhoad knew **(1)** that the Ohio Board's findings pertained to only building conditions, not the practice of medicine; **(2)** that neither Indiana nor Ohio have medical-board statutes governing medical-office health and safety; and **(3)**, from Mr. Lundeen's investigator's report, that the building-condition allegations were baseless. *Id.* Mr. Lundeen alleges that the false statements, coupled with the suspension of his medical license, damaged his professional reputation and employability, in which he has a liberty and property interest. He alleges that the violation of his liberty and property interest are actionable under the "stigma-plus" doctrine of *Siegert v. Gilley*, 500 U.S. 226 (1991).

These additional allegations do not correct the deficiency in this count. Mr. Lundeen already pled that he had a liberty and property interest in his medical license. *Amended Complaint*, ¶7.2. Adding allegations that he has a liberty interest in his professional reputation as well and that the Board knew that its suspensions were "baseless" does not identify any Constitutional due-process procedures that Mr. Lundeen was not afforded. The "stigma-plus" doctrine of *Siegert* and *Paul v. Davis*, 424 U.S. 693 (1976), addresses only the criteria for the existence of a protectable liberty interest in reputation – when defamation is coupled with termination or, according to Mr. Lundeen, loss of a professional license – and the effect of finding that such a liberty interest exists is that due-process procedural protections attach. S*ee Dupuy v. Samuels*, 397 F.3d 493, 510-11 (7th Cir. 2005). Thus, Mr. Lundeen is placed back where he was with the *Amended Complaint* — failing to identify due process protections that he was not afforded.

Next, the *Proposed Complaint* repeats the state procedural violations pled in the *Amended Complaint* and only adds verbiage to the previous assertions that the violations are important because they deprived the Indiana Board of subject-matter jurisdiction, which renders the Board's suspensions null and void. *Proposed Complaint* ¶ 7.21, 7.22, and 7.27. So, there is nothing substantively new added.[6] The *Proposed Complaint* adds statements or arguments like "[t]his is not a matter of asking a federal court to enforce state law, but rather, to *interpret state law* and determine if the state officials acquired

---

[6] The *Amended Complaint* already pled that, as a result of the failure to comply with state procedures, the Indiana Board "did not acquire jurisdiction of the parties and this particular case" and "the Defendant did not have subject matter jurisdiction in the alleged action." *Amended Complaint* ¶ 7.4.

16

subject matter jurisdiction by adherence to statute." *Proposed Complaint* ¶ 7.21. Asking the Court to declare that the Indiana Board's orders are void for failure to comply with state-law requirements is enforcing state law and the Court again declines to do so. Thus, Mr. Lundeen has again failed to plead any procedures mandated by federal due process that he was not afforded.

Because the *Proposed Complaint*'s count 4 again fails to state a claim, leave to amend in order to plead the proposed count 4 is denied.

**Counts 5 and 6, due process.**

The *Proposed Complaint* adds nothing more to these counts as pled in the *Amended Complaint* except the conclusory assertions that Mr. Lundeen is not appealing the Ohio Board's or Indiana Board's orders, but only asserting collateral challenges based on the Indiana Board's lack of subject-matter jurisdiction. These assertions have been addressed above. Because these counts fail to plead any procedures mandated by due process that Mr. Lundeen was not afforded and otherwise fail to correct deficiencies noted in the Court's *Entry*, leave to amend in order to plead counts 5 and 6 them is denied.

**Conclusion**

Because the *Proposed Complaint* adds defendants and claims not permitted by the Court's *Entry* of January 7, 2014 and fails to correct the deficiencies noted in the previously pled claims, Plaintiff's *Motion for Leave To File Verified Second Amended Complaint* [doc. 77] is **DENIED**. Because Plaintiff's claims were dismissed for failure to

17

state a claim, judgment will issue dismissing this Cause with prejudice under Fed. R. Civ. P. 41(b).

**DONE this date:** 06/09/2014

_[signature]_
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

*via* first-class mail:
James E. Lundeen, Sr.
120 Hawthorne Lake Drive
Bloomington, Illinois 61704

Distribution to all ECF-registered counsel *via* ECF-generated e-mail.